**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> ) <br> ) <br> RAMSEY HILL, ) <br> ) <br> Defendant. ) | Case No. 2:16-cr-114-JAD-GWF <br><br> **FINDINGS & RECOMMENDATIONS** <br><br> **Re: Motion to Suppress (ECF No. 21)** |

This matter is before the Court on Defendant Ramsey Hill's Motion to Suppress (ECF No. 21), filed on August 8, 2016.  The Government filed its Response (ECF No. 25) on August 22, 2016 and a Supplemental Brief (ECF No. 33) on August 31, 2016.  Defendant filed his Reply (ECF No. 34) on September 12, 2016.  The Court conducted an evidentiary hearing in this matter on October 17, 2016.

**BACKGROUND**

Defendant Ramsey Hill is charged with one count of felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).  This charge arises out of the police stop of a Mercury Grand Marquis automobile ("Grand Marquis") at approximately 11:53 P.M. on March 11, 2016 in Las Vegas, Nevada.  Metropolitan Police Department (LVMPD) Officers Justin Spurling and Brian Sette were traveling westbound on Lake Mead Blvd near Michael Way when they allegedly observed the Grant Marquis enter the street from an apartment complex and proceed eastbound on Lake Mead Blvd.  According to the officers, the automobile's head lights were not illuminated as required by Nevada Revised Statute (NRS) 484D.100.1(a).  Officer Spurling, the

driver of the patrol car, made a U-turn and proceeded to follow the Grand Marquis which stopped for a red light at Lake Mead Blvd and Decatur Blvd.  After the traffic light turned green and the Grand Marquis proceeded through the intersection, the officers activated the patrol car's emergency lights and siren.  The Grand Marquis turned into a side street, Madeline Drive, where it stopped.  As the Grand Marquis pulled over to stop, the officers illuminated the patrol car's LED spotlights so that they could see inside the automobile.  Officers Spurling testified that as the officers were exiting the patrol car, he observed the front seat passenger, later identified as Defendant Ramsey Hill, remove something from his waistband and place it beneath the front passenger seat.  This movement is arguably visible in the recording from Officer Sette's body camera/microphone.  *Defendant's Hearing Exhibit "D."*  The audio recording shows that both officers commented on the movement immediately after it occurred by saying "what was that?" and "I saw it."  Both officers testified that they suspected that the passenger had placed a firearm or contraband under the front passenger's seat.

      Officer Spurling approached the Grand Marquis on the driver's side and Officer Sette approached on the passenger side.  Three adults were in the automobile—the driver, Philip Nelson, the front seat passenger, Defendant Hill, and an adult female in the rear passenger seat behind the driver.  Officer Spurling spoke briefly with the driver and rear seat passenger from whom he obtained identification.  He asked the driver and rear seat passenger if they had been drinking and they responded no.  Officer Spurling testified that he asked a question of the front seat passenger, Defendant Hill, who looked down and away.  Officer Spurling stated that this increased his suspicions and he thereupon signaled to Officer Sette that they should remove the occupants from the automobile.

      The recording shows that Officer Sette asked Defendant Hill to step out of the automobile.  As Defendant Hill did so, Officer Sette told him he was going to pat him down because he observed him make a movement in the automobile.  Officer Sette thereupon performed the pat-down.  He asked Defendant Hill if he had any weapons or contraband on him.  Defendant Hill answered no.  Officer Sette then escorted Defendant Hill to the front of the patrol car where he directed him to stand with Mr. Nelson and the female passenger.  Officer Spurling testified that he believed he patted down Mr. Nelson, but acknowledged that it was possible he did not.  He also believed he patted

down the female passenger but was not one hundred percent sure.

Officer Sette entered the patrol car and ran a computer records checks on the automobile registration and the occupants. Officer Sette testified that the records check showed that the Grand Marquis was not registered to any of the occupants. The records check on Defendant Hill revealed that he was a convicted felon, had an outstanding arrest warrant and was also reported to be armed and dangerous. While still seated in the patrol car, Officer Sette called Officer Spurling to come over. Officer Sette also asked "whose car is this?" The microphone recording did not pick up any response to this question. Officer Sette then told Officer Spurling to "hook him" which meant to place Defendant Hill in handcuffs. Officer Sette then exited the patrol car and spoke to Mr. Nelson and the female passenger to distract them while Officer Spurling approached Defendant Hill and placed him in handcuffs. As Officer Sette exited the patrol car, he again asked "whose car is this?" The driver, Mr. Nelson, responded that the automobile belonged to his mother.[1] Once Defendant Hill was in handcuffs, Officer Spurling took him over to the sidewalk and had him sit down. As this was being done, Office Sette told Defendant Hill that there were warrants for his arrest.

Officer Spurling testified that as he was approaching Defendant Hill, but prior to placing him in handcuffs, he heard Officer Sette ask "whose car is this?" Mr. Nelson answered that it was his parents. Officer Spurling testified that he thereupon asked Mr. Nelson if there was anything in the vehicle that he should know about. According to Officer Spurling, Mr. Nelson said "no, go ahead and look." This exchange between Officer Spurling and Mr. Nelson, if it did occur, was not picked up on Officer Sette's body camera microphone. After Defendant Hill was handcuffed and seated on the sidewalk, Officer Spurling went to the Grand Marquis and looked under the front passenger seat with his flashlight where he observed a handgun. The recording shows that Officer Spurling called out "413," which is police code for a firearm, approximately 12-13 seconds after he had Defendant Hill sit down on the sidewalk. After discovering the handgun, the officers "froze" the automobile and Officer Spurling called his supervisor to obtain a telephone search warrant for the automobile.

---

[1] The Government introduced a print-out response from the Nevada Department of Motor Vehicles which shows that on March 11-12, 2016 the Grand Marquis was registered to Ida Dolores Patrick and Leroy Patrick. *Government Hearing Exhibit "1."*

1  Officer Spurling thereafter applied for and obtained a telephonic search warrant.  The firearm was
2  then recovered from the automobile pursuant to the search warrant.
3        Defendant introduced a copy of the LVMPD written policy regarding obtaining consent to
4  search.  *Defendant's Hearing Exhibit "A."*  The policy states in part as follows:

> c.    Oral – Either audio recorded or written consent is clearly preferable, however, consent may be given orally if all information requested on the written consent form is provided to the subject and such notification is documented in an Officer's Report or Arrest Report.  This includes the date, time, event number, name of person giving consent, type of investigation and a description of the location of the search.  A witness is preferred for oral consent.

10        Officer Sette testified that while he was inside the patrol car, he observed Officer Spurling
11  speak with the driver, Mr. Nelson, and the other occupants, but he did not hear what they said to each
12  other.  Officer Sette also testified that after he told Officer Spurling to handcuff the Defendant and
13  exited the patrol car, he saw Officer Spurling speak to Mr. Nelson, but did not hear what was said.
14  Office Sette did not ask anyone for permission to search the Grand Marquis.
15        Because the patrol car's spot lights were shining on the Grand Marquis throughout the stop, it
16  is not possible to definitively determine from the recording whether the Grand Marquis' headlights
17  were illuminated.  It appears, however, that they may have been illuminated.  The officers did not
18  issue Mr. Nelson a citation for operating the vehicle without its head lights illuminated.

## DISCUSSION

20        The Fourth Amendment to the United States Constitution protects the right of the people to
21  be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures.
22  The Fourth Amendment further provides that no warrants shall issue, but upon probable cause,
23  supported by oath or affirmation.

24      **1.**    **Lawfulness of the Stop.**

25        A police officer's conduct in stopping a motor vehicle for a suspected traffic violation is a
26  seizure within the meaning of the Fourth Amendment.  *Delaware v. Prouse,* 440 U.S. 648, 653, 99
27  S.Ct. 1391, 1396 (1979).  Where the officer has reasonable suspicion or probable cause to believe
28  that a violation of traffic laws has occurred, he may stop and detain the vehicle and its occupants to

investigate the infraction. *Whren v. United States,* 517 U.S. 806, 809, 116 S.Ct. 1769 (1996); *United States v. Lopez Soto,* 205 F.3d 1101, 1104–5 (9th Cir. 2000). In this case, Officer Spurling and Officer Sette testified that they observed the Grand Marquis automobile traveling on Lake Mead Blvd with its head lamps off and proceeded to stop it for that reason. Nevada Revised Statute (NRS) 484D.100.1 states that "[e]very vehicle upon a highway of this State . . . must display lighted lamps and illuminating devices as respectively required in this chapter for different classes of vehicles: (a) At any time from one-half hour after sunset to one-half hour before sunrise."

Defendant Hill does not dispute that the officers had lawful grounds to stop the Grand Marquis if its headlights were off. Although Defendant does not concede that the headlights were off, he did not introduce any evidence to directly contradict the officers' testimony. As stated above, the recording indicates that the headlight on the Grand Marquis may have been illuminated after it was stopped. The automobile had traveled a few blocks from where the officers had first observed it, however, and it is possible that the driver turned the headlights on at some point. The sole basis for disputing the officers' testimony is the apparent or implied assertion that their testimony is not credible. Although the Court has doubts regarding Officer Spurling's testimony that he obtained consent to search the Grand Marquis, the Court does not have a reasonable basis to reject both officers' testimony that the automobile's headlamps were off. The Court finds that the officers' testimony that the automobile's headlights were off is credible. The stop of the vehicle was therefore lawful and did not violate the Fourth Amendment.

**2.     Defendant Hill's Standing to Contest the Search of the Automobile.**

The evidence is undisputed that the Grand Marquis automobile was owned by Mr. Nelson's parents, and, inferentially, that he was authorized to drive it. There is no evidence that Defendant Hill was anything other than a permissive passenger in the automobile. As stated in *United States v. Pulliam*, 405 F.3d 782, 785–86 (9th Cir. 2005), quoting *Rakas v. Illinois*, 439 U.S. 128, 134, 99 S.Ct. 421 (1978), "'[a] person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's person or property has not had any of his Fourth Amendment rights infringed.'" In *Pulliam*, the police stopped the automobile in which the defendant was a passenger because it did not have an operating rear brake light and

because the car "rolled through" a stop sign. After stopping the car, the police ordered the driver and the defendant out of the vehicle. One of the officers went directly to the car, looked under the passenger seat and found a gun. The defendant was subsequently charged with being a felon in possession of a firearm. The court noted that because officers "cannot physically stop a car without seizing its passengers, *see Whren*, 517 U.S. at 809–10, 116 S.Ct. 1769, a passenger who objects to the legality of the stop effectively is challenging the official action that caused a violation of his own rights." *Id.* 405 F.3d at 788. The passenger therefore has "standing" to challenge the validity of the stop and the admission of evidence resulting from the stop. The court further states:

> But when, as here, the initial stop is lawful, the situation is different. The continued detention of the vehicle does not necessarily entail the detention of its occupants; they could simply be permitted to walk away. If a passenger is unlawfully detained after the stop, he can of course seek to suppress evidence that is the product of that invasion of his own rights. But a passenger with no possessory interest in a vehicle usually cannot object to *its* continued detention or suppress the fruits of that detention, because "Fourth Amendment rights are personal rights which . . . may not be vicariously asserted." *Rakas*, 439 U.S. at 133–34, 99 S.Ct. 421 (internal quotation marks omitted).

*Pulliam*, 405 F.3d at 788–89.

Once a motor vehicle has been lawfully stopped and detained for a traffic violation, the police officer may order the driver and passengers to get out of the vehicle, and once outside the vehicle, the officer may pat the occupant(s) down for weapons if the officer reasonably concludes that the person might be armed and presently dangerous. *Arizona v. Johnson*, 555 U.S. 323, 129 S.Ct. 781, 786 (2009); *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 98 S.Ct. 330 (1977); and *Maryland v. Wilson*, 519 U.S. 408, 414, 117 S.Ct. 882 (1997). In this case, Officer Sette appropriately performed a pat down of Defendant Hill based on the officers' observation of his suspicious movement in the vehicle as it was stopping. No weapons or contraband was discovered as result of the pat down. Officers may also obtain identification from the vehicle occupants and run records checks on the vehicle and the occupants, including checks for warrants. *Arizona v. Johnson*, 129 S.Ct. at 786; *Rodriguez v. United States*,— U.S. —, 135 S.Ct. 1609, 1614–15 (2015). The police, however, may not prolong the detention of the vehicle occupants after the purpose of the traffic stop is completed, unless they have developed reasonable suspicion or probable cause to continue to investigate other

criminal activity.  *Rodriguez*, 135 S.Ct. at 1615–17.  In this case, approximately five minutes elapsed from the time that the Grand Marquis was stopped until the officers determined that there was an outstanding warrant for Defendant Hill's arrest and he was placed in custody.  Immediately after that Officer Spurling went to the automobile and observed the handgun under the front passenger seat.

      Defendant Hill has the burden of showing that he has standing to challenge the search of the automobile.  *United States v. Kovac*, 795 F.2d 1509, (9th Cir. 1986), citing *Rakas v. Illinois*, 439 U.S. at 143–44, 99 S.Ct. 421.  Lack of standing to challenge a search may be waived if not timely asserted by the Government.  *United States v. Ewing*, 638 F.3d 1226, 1230 (9th Cir. 2011) (holding that government waived lack of standing when it first raised the issue during oral argument of defendant's appeal).  In this case, the Government did not raise lack of standing in its August 22, 2016 response to Defendant's motion to suppress.  *Response (ECF No. 25)*.  It did, however, raise lack of standing in its supplemental brief filed nine days later on August 31, 2016.  *Supplemental Brief (ECF No. 33)*.  This was 12 days before Defendant filed his reply on September 12, 2016, and more than a month and a half before the evidentiary hearing on October 17, 2016.  Defendant, therefore, had sufficient notice of the Government's lack of standing argument to address it in his reply brief and to present evidence at the hearing in support of any claim of standing.  Under these circumstances, the Government did not waive Defendant's lack of standing to assert a violation of the Fourth Amendment.  Defendant did not make any showing that he had a possessory interest in the Grand Marquis.

      Because Defendant Hill does not have standing to challenge the search of the Grand Marquis under the Fourth Amendment, it is unnecessary to reach the issue of whether Officer Spurling obtained lawful consent to search the automobile.  The Court does not believe, however, that the Government met its burden to show consent to search.  *See Schneckloth v. Bustamonte*, 412 U.S. 218, 222, 93 S.Ct. 2041, 2045 (1973) (prosecutor has the burden of proving that consent was, in fact, freely and voluntarily made).  Consent is determined from the totality of the circumstances and voluntariness generally involves the consideration of certain relevant factors.  *United States v. Jones*, 286 F.3d 1146, 1152 (9th Cir. 2002).  Officer Spurling testified that as he was approaching Defendant Hill to place him in handcuffs, he asked Mr. Nelson if there was anything in the vehicle

that he should know about and Mr. Nelson said "no, go ahead and look." This exchange was not picked-up by Officer Sette's body camera microphone, although it appears that it probably would have been if the exchange occurred after Office Sette exited the patrol car. Only moments later, for example, the microphone picked-up from a greater distance Officer's Spurling's statement "413," indicating that he found a handgun in the automobile   Additionally, Officer Sette did not hear the exchange between Officer Spurling and Mr. Nelson. As stated in *United States v. Reid*, 226 F.3d 1020, 1025 (9th Cir. 2000), the existence of consent to search is not lightly to be inferred. On these facts, consent to search has not been established.

## CONCLUSION

The officers' stop of the Grand Marquis automobile in which Defendant Hill was a passenger was lawful based on probable cause to believe that a violation of a traffic law had occurred. Defendant Hill was not unlawfully detained during the traffic stop. He did not have a possessory interest in the automobile and did not have a reasonable expectation of privacy in the interior of the vehicle, including the space under the front passenger seat. Defendant Hill therefore does not have standing to challenge the legality of the search. Accordingly,

## RECOMMENDATION

**IT IS RECOMMENDED** that Defendant's Motion to Suppress (ECF No. 21) be **denied**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 27th day of October, 2016.

_____
GEORGE FOLEY, JR.
United States Magistrate Judge